# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTIES OF SUFFOLK AND NANTUCKET, MARCH TERM 1833, AT BOSTON.

### PRESENT:

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL PUTNAM, ⎫
Hon. SAMUEL S. WILDE, ⎬ Justices.
Hon. MARCUS MORTON, ⎭

---

## WILLIAM SPROUL et al. versus AUGUSTUS HEMMINGWAY.

A brig, which was towed at the stern of a steamboat employed in the business of towing vessels in the river Mississippi, below New Orleans, was, through the negligence of the master and crew of the steamboat, over whom those in charge of the brig had no control, brought into collision with a schooner lying at anchor. It was *held*, that the owner of the brig was not responsible for the damage sustained by the schooner.

THIS was an action upon the case, in which the plaintiffs, as owners of the schooner Triton, claimed compensation for damages sustained by that vessel in consequence of being run against by a brig, called the Burton, belonging to the defendant.

At the trial, before *Shaw* C. J., it appeared, that on the evening of April 13, 1828, while the Triton was lying at anchor in the river Mississippi, about eight or nine miles

below New Orleans, the steamboat Grampus came down, having a ship lashed upon each side, and the Burton towed astern by a hawser of about thirty fathoms in length ; that the steamboat passed so near the schooner that the ship on her larboard side just cleared the schooner, and the collision between the brig and the schooner took place, which is the ground of this action. Both vessels sustained damage, that of the schooner amounting to a sum between six hundred and seven hundred dollars.

There was evidence tending to show, that, in consequence of the negligence and bad management of those who had the care and conduct of the steamboat, the vessel in tow, without any culpable negligence or unskilfulness of those who had charge of her, was thrown out of the track of the steamboat and so caused the collision. In reference to which, the jury were instructed, that if this collision took place through the negligence, unskilfulness or misconduct of those who had charge of the steamboat, the owner of the Burton was not liable in this action. The plaintiffs excepted to this instruction.

It appeared that the Grampus was a tow steamboat, and that it was customary for masters of vessels to employ steamboats of this sort to tow them in the river ; and that the owner of the Burton, who was on board at the time of the collision, contracted with the master of the Grampus, for the towage of the Burton to the mouth of the river.

The jury found a verdict for the defendant.

*H. H. Fuller* and *W. R. P. Washburn* for the plaintiffs. The owner of the Burton was liable for the acts of the master and crew of the steamboat, who were, for the time, his servants, employed and paid by him He elected to be towed by the steamboat, and thus voluntarily placed his vessel in a situation in which she would be more dangerous to others. In this respect this case is stronger than that of an innkeeper, who is liable not only for the acts of his servants, whom he selects, but for the acts of travellers, whom he may be compelled to receive.

It is true, that the master of the steamboat was not appointed by the defendant, and was not under his control ; but

the same objection applies in the case of a pilot, and yet the owner of the vessel is held to be responsible for the acts of the pilot who may have charge of his vessel. *Yates* v. *Brown*, 8 Pick. 23, cites *Snell* v. *Rich*, 1 Johns. R. 305. There might be a question as to the liability of the masters of the Grampus and Burton, but there can be none as to that of the *owner* of the Burton. *Stone* v. *Cartwright*, 6 T. R. 411 ; *Bush* v. *Steinman*, 1 Bos. & Pul. 404 ; 2 Dane's Abr. 511 ; *Fletcher* v. *Braddick*, 5 Bos. & Pul. 182 ; *Nicholson* v. *Mounsey*, 15 East, 384 ; Code Napoleon, *liv.* 3, *tit.* 4, § 1384.

Even if the master of the steamboat is to be considered as the agent of the owner of the steamboat, still we contend that the owner of the Burton is responsible for his acts ; for where an agent hires a sub-agent, the principal becomes responsible for the acts of the sub-agent. 2 Kent's Comm. 210 ; *Matthews* v. *West London Water Works Co.*, 3 Campb. 403. Reasons of public policy also require that the defendant should be held liable. *Bush* v. *Steinman*, 1 Bos. & Pul. 404 ; *Yates* v. *Brown*, 8 Pick. 23.

It may be said that this is like the case of goods on board a freighting ship, or lashed to a vessel, as lumber, in which case the owner of the goods or lumber would not be responsible for damage done by the ship. But we think this is not an analogous case ; for here the Burton was steered and navigated, just as much as if she had not been in tow ; it is not as if she had been put on board the steamboat.

*C. G. Loring*, for the defendant, cited *Laugher* v. *Pointer*, 5 Barn. & Cressw. 547 ; *S. C.* 8 Dowl. & Ryl. 556, and cases cited ; *St.* 6 *Geo.* 4, *c.* 125, altering the law in regard to the liability of the owner of a vessel for the acts of the pilot.

SHAW C. J. delivered the opinion of the Court. The plaintiffs contest the correctness of the instruction of the judge to the jury, and insist that the owners, officers and crew of the steamboat, must be taken to have been, for the time being, the agents and servants of the defendant, entrusted with the navigation and management of his vessel, and therefore he is within the rule, that where a stranger suffers

*Sproul v. Hemmingway.*

*March 28th.*

damage, by the negligence or unskilfulness of another's agent or servant, the owner or employer shall stand chargeable for the damage.

This question has been ably argued, and it certainly must be considered as one not free from difficulty. The maxim *respondeat superior* in such cases, is well settled ; but the difficulty consists in determining what facts and circumstances, in legal contemplation, go to establish the relation of superior and subordinate, of master and servant, or employer and employee, in such a manner as to give effect and application to the rule. This greatly vexed question has been very much discussed ; and there are two modern cases, in which it is believed that the authorities are fully reviewed and considered. *Steinman* v. *Bush*, 1 Bos. & Pul. 404 ; *Laugher* v. *Pointer*, 5 Barn. & Cressw. 547 ; *S. C.* 8 Dowl. & Ryl. 556. The former was decided mainly on the ground, that the defendant was the owner of the house, under repair by persons employed directly or indirectly by him, and that the damage arose from carelessness in placing the materials intended for those premises, on or near them, in such manner as to frighten the plaintiff's horse. It was decided principally on the ground, that the owner of real estate must be taken to be the employer of all those, who are engaged in making repairs for him ; and that having the power to control and regulate the use of his own estate, he is bound to do it, in such a manner, that others may not be injured by the mode in which it is used.

In the other case, where the owner of a coach had engaged horses and a driver for the day, and the damage was occasioned by the negligence of such driver; the question was whether the owner of the carriage or the owner of the horses, was responsible. The learned judges of the King's Bench were equally divided, and there was great difference of opinion among the other judges who were consulted. Without attempting to trace the origin of this principle or review the authorities, I shall refer to those two cases, as giving a full and comprehensive view of the argument and authorities, and proceed to state the decision of the Court, upon the present question, with some of the reasons upon which it is founded.

The case of a vessel towed by a steamboat, is certainly new in its facts, and could not have been anticipated by the founders of the common law ; but it is one of the advantages of the common law, that it depends upon plain, equitable and practicable principles adapted to all times and occasions, and broad and comprehensive enough to embrace new cases as they arise. The decision of this case therefore must depend upon the application of established principles and analogous cases.

The owners of a vessel or coach are held liable for damages to third persons, occasioned by the negligence or un skilfulness of those who are in the management of the ship or coach ;

1. Either because they are engaged or employed by them, are subject to their order, control and direction, and so are to be deemed, either generally or for the particular occasion, their servants ;

2. Or, in respect to their being engaged in the business or employment of the owners, conducting and carrying on such business for the profit or pleasure of the owners, by reason of which the acts done in the prosecution of such business, shall be taken *civiliter* to be done by the employers themselves, and this, whether the persons whose negligence is the cause of damage, have been retained and employed by the principal himself, or by the procuration of others, employed by him for the purpose.

Tried by either of these principles, we think that the de fendant is not responsible for damages, attributable to the carelessness or want of skill of the master and crew of the towing vessel. They were not the servants of the defendant ; were not appointed by him ; did not receive their wages or salaries from him ; the defendant had no power to remove them ; had no power to order or control them in their movements ; had no contract with them, but only through them, with the owners of the steamboat, for a participation in the power, derived from the public use and employment of that vessel, by her owners. After making such contract, it was perfectly in the power of the owners of the steamboat, to appoint another master, pilot and crew, and the defendant would have had no cause of complaint.

1 *

3. Nor can the master and crew of the steamboat, in any intelligible sense, be considered as in the employment or business of the defendant, any more than a general freighting ship, her officers and crew, can be considered as in the employment of each freighter of goods, or the master and crew of a ferry-boat, in the employment of the owners of each coach, wagon or team transported thereon.

The steamboat was engaged in an open, public, distinct branch of navigation, that of towing and transporting vessels up and down the Mississippi, for a certain toll or hire, for the profit of the owners. The defendant seemed to have the same relation to the steamboat, that a freighter has to a general ship, or a passenger to a packet. The defendant participated in the benefit but incidentally and collaterally ; he did not share in the profits of the business, one which from its magnitude may well be called the trade of towing. Such a trade may be considered as much a public and distinct employment, as that of freighting or conveying passengers.

The steamboat was in no sense in the possession of those whom she was employed to tow. If it is contended, that the defendant is liable on the ground, that the steamboat was, for the time being, in his possession, occupation or employment, then it would follow that the defendant would be liable for the negligence of the officers and crew of the steamboat, as well whether the plaintiff's vessel was struck by the defendant's vessel, the Burton, as struck by either of the other vessels towed, or by the steamboat herself ; which cannot for a moment be contended.

The case may well be illustrated by considering the condition of one of the side vessels, firmly lashed to the steamboat, and governed wholly by its movements. The payment for the privilege of being thus moved or transported, is precisely like freight paid, for heavy luggage, timber or spars, for instance, carried in or upon a ship. The whole conduct and management is entirely under the control of the master and crew of the towing vessel in the one case, as it is of the freighting ship, in the other. If collision takes place between the side ship, thus firmly lashed, and another vessel, it is as directly attributable to the steamboat, and her officers and

crew, as if the steamboat herself had come into collision with the other vessel. The towed ship is the passive instrument and means, by which the damage is done. But there is no difference, in this respect, between the condition of one of the side ships, and a ship towed astern, except this ; that on board the ship towed astern by means of a cable, something may and ought to be done by the master and crew, in steering keeping watch, observing and obeying orders and signs, and if there be any want of care and skill in the performance of these duties, and damage ensue, then the case we have been considering does not exist ; the damage is attributable to the master and crew of the towed ship, and they and their owners must sustain it. The jury were so instructed at the trial, and it was left to them to find whether the damage was caused by the negligence of the one or the other. Then supposing all duties faithfully performed on board the towed vessel, and the damage to be caused by the negligence or misconduct of the master and crew of the steamboat, there is no difference between the case of the side-ship, which is wholly passive, and the ship astern, which is partially so.

The case most nearly resembling this, perhaps, is that of a vessel chartered, where for a certain time the whole use and benefit of the ship is transferred to the charterers, but the officers are appointed and the crew engaged and subsisted by the owners, in which case it is held, that the owners, and not the charterers, are responsible to third persons for any damage occasioned by the negligence of the officers and crew. *Fletcher* v. *Braddick*, 5 Bos. & Pul. 182.

Under the circumstances of this case, the Court are of opinion, that the defendant is not responsible for damage arising from the negligence or unskilfulness of the master, officers and crew of the steamboat ; that the direction, in this respect, at the trial, was correct, and that there must be judgment on the verdict.